**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )      1:07-CR-72-TS |
| | ) |
| WILLIAM ERIC THOMAS | ) |

## OPINION AND ORDER

The Defendant, William Eric Thomas, pleaded guilty to knowingly and with intent to defraud, using unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2), and this Court sentenced him to thirty months' imprisonment and ordered him to pay $14,707.78 in restitution. This matter is before the Court on the Defendant's Motion to Vacate, Set-Aside, or Correct A Sentence By a Person in Federal Custody [DE 107], filed pursuant to 28 U.S.C. § 2255. For the reasons stated in this Opinion and Order, the Motion is found to be without merit and will be denied.

## BACKGROUND

**A.      The Indictment**

The Indictment, filed on July 25, 2007, charged that from on or about December 10, 2006, and continuing until February 20, 2007, the Defendant, knowingly and with intent to defraud, used one or more unauthorized access devices, specifically a Chase Visa credit card with account number ending in 5163 and a Discover credit card with account number ending in 7999. The Indictment charged that by such conduct, the Defendant obtained goods and money with a total value of $1000 or more during a one year time period, and that such conduct affected interstate commerce. The Indictment charged that the Defendant violated 18 U.S.C. § 1029(a)(2),

which makes it unlawful to "knowingly and with intent to defraud . . . use[ ] one or more unauthorized access devices during any one-year period, and by such conduct obtain[ ] anything of value aggregating $1,000 or more during that period." 18 U.S.C. § 1029(a)(2).

**B.    The Defendant's Plea**

After the Defendant requested and obtained court-appointed counsel, he entered a plea of not guilty and was conditionally released. Less than two months later, the Defendant filed a *pro se* request for continuance of his trial and to have new counsel appointed to his case. His counsel then filed a motion to withdraw, citing a breakdown in communication that was so pervasive and substantial as to make further representation ineffective. These events led to the Defendant's second court-appointed lawyer, Albert Anzini III, entering his appearance.

During a conference on March 17, which was scheduled as a final pretrial conference, counsel for the Defendant advised the Court that the Defendant intended to plead guilty without a plea agreement. The Court scheduled a change of plea hearing for April 10. However, on April 10, the Defendant expressed to the Court concerns about his attorney's representation and about pleading guilty, prompting the Court to grant the Defendant's oral motion to continue the plea hearing.

On April 18, the Defendant pleaded guilty to the charge of access device fraud contained in the Indictment. At the beginning of the proceeding, counsel informed the Court that, since the April 10 hearing, he had met with the Defendant on two separate occasions to discuss the proposed plea agreements, the Defendant's rights, and the Defendant's concerns regarding relevant conduct. He stated that, based on these discussions, the Defendant was prepared to plead

guilty to the Indictment charge without the benefit of a plea agreement. (April 18, 2008, Plea Hr'g Tr. 3.) The Court then placed the Defendant under oath and engaged in a colloquy with him. After completing the colloquy, the Court accepted the Defendant's plea of guilty. The Court directed the United States Probation Office to prepare a presentence investigation report (PSR) and scheduled an evidentiary hearing with regard to sentencing issues, including the amount of loss attributable to the Defendant's access device fraud.

**C.      The Presentence Investigation Report (PSR)**

On May 8, 2008, a United States Probation Officer prepared a PSR for the Defendant. The Officer drafted the offense conduct summary using the United States Postal Inspection Service's investigative documents and the Government's version of events. This section of the PSR detailed the takeover of dormant credit card accounts held in the name of "William Thomas," whose middle initial is different than Defendant William Eric Thomas's. The affected accounts were a Chase Visa credit card with account number ending in 5163, and a Discover credit card account ending in 7999. For each card, a person identifying himself as the cardholder contacted the credit card company to request an address and phone number change. The addresses were changed to the Fort Wayne residences of the Defendant's friend and the Defendant's brother. The Defendant had requested and received permission to receive mail at both of these addresses. The address change was requested for the Chase card on November 21, 2006, and for the Discover card on February 17, 2007. The postal inspector connected telephone numbers captured on Chase's and Discover's automatic number identification (ANI) systems during the period of credit card activity that followed the takeovers to phone numbers that were

linked to the Defendant.[1]

During the investigation, Postal Inspector Andrew Gottfried showed the Defendant's friend and the Defendant's brother surveillance video photographs, which they identified as picturing the Defendant. One of the captured images was from a December 10, 2006, purchase for $204.03 at Lowe's in Fort Wayne, Indiana, using William Thomas's Chase credit card. The other picture was taken on February 20, 2007, at National City Bank in New Haven, Indiana, where William Thomas's Discover card was used to obtain a $3,500 cash advance.

The Postal Inspector determined that purchases and cash advances using the Chase and Discover credit cards affected interstate commerce because interstate banking channels were used in the approval and authorization process: Chase's authorization center is located in Georgia, and Discover's is located in Texas.

In addition to highlighting these purchases, the PSR contained a line item of purchases made using the Chase Visa 5163 account from November 22 to December 29, 2006, totaling $10,435.29. The PSR contained the same kind of information for the 7999 Discover card account for purchases and cash advances from February 20–25, 2007, totaling $8480.92. The PSR cited these totals as the amounts the Defendant would owe to Chase and Discover as restitution.

Credit card charges from separate cards, a group of three Citigroup credit card accounts were also listed in the PSR. These three cards were mailed to cardholder "William Thomas" at the home of the Defendant's brother. Charges from the Citigroup cards, made during January and February 2007, were included in the amount of loss calculation, but they were not included as restitution because the offense of conviction was limited to the unauthorized use of the Chase

---

[1] During his first interview with the investigating authorities, the Defendant assured them that his friend, his brother, his wife, and his mother were not involved with the account takeovers that were being investigated.

4

and Discover cards.

On May 27, the Government advised the probation officer that it had no objections to the PSR. On June 12, the Defendant, through his counsel, provided specific objections regarding the amount of loss. The Defendant denied making six of the reported Discover card purchases, totaling $4,311.43. He also denied $2,232.44 worth of transactions on the Sears Mastercard. On June 13, the Government informed the probation officer that it did not agree with the Defendant's specific denials. These objections were set forth in a Second Addendum to the PSR dated June 13. If the Court sustained these objections, the amount of loss would have been reduced to about $25,715.00.

## D.      June 16 Evidentiary Hearing

On June 16 the Court conducted an evidentiary hearing for the purpose of receiving evidence regarding the amount of loss and calculation of the advisory guideline range. The Defendant, who was placed under oath, stated to the Court that his objection to the fourteen line item purchases identified in the Second Addendum was his only objection to the PSR, and that he was not contesting any of the other charges that were attributed to him. (June 16 Hr'g. Tr. 5–6). However, later in the same proceeding, the Defendant stated that he thought the charges should have been in the $14,000 to $15,000 range. (*Id.* at 8–9, 11.) He then stated that, despite this, he was willing to go forward with his only objections being the ones presented in the Second Addendum. (*Id.* at 13–14.)[2]

For the Government's part, it advised that in the interest of judicial economy and "other

---

[2] This may be explained by the fact that any loss between $10,000 and $30,000 would yield the same offense level under the guidelines.

factors" it would not object to a revision of the PSR to remove the fourteen purchases that the Defendant denied making, as set forth in the Second Addendum. Agreeing that the objections were resolved for purposes of sentencing, the parties did not present any evidence and the Court sustained the Defendant's objections and set a July 7 sentencing date. The Court also invited briefing to address the Defendant's date of surrender, as this was an issue raised by the Defendant during the hearing.

### E.      Submissions Regarding Sentencing

On June 20, the Defendant filed a Sentencing Memorandum requesting that his criminal history category be reduced from Category VI to Category IV or V, and that his sentence include placement in a halfway house or home confinement. The Defendant argued that a criminal history categorization of VI drastically overstated the seriousness of his criminal history. Shortly thereafter, on June 27, the Defendant filed his own letter with the Court. He stated that, "[a]fter getting back into the discovery material" he calculated the amount of loss to be $9,898.76. (DE 40.) He attached a copy of the line item purchases for each credit card and marked the purchases that he admitted responsibility for. He noted that the significance of this calculation was that it lowered his base offense level by an additional two points, which was four points less than originally calculated in the PSR. The Defendant's letter also revealed his belief that his counsel was only doing the "bare minimum" to represent the Defendant's interests. (*Id.*)

On June 30, the Government responded to the Defendant's Sentencing Memorandum, opposing any reduction in his criminal history category. The Government did not respond to the Defendant's *pro se* letter.

**F.      Motion to Withdraw and Appointment of New Counsel**

On July 2, the Defendant's counsel moved to withdraw on grounds that the attorney-client relationship had suffered a material breakdown demonstrated, in part, by the Defendant's letter of June 27. Upon receipt of counsel's Motion, the Court vacated the sentencing hearing and set the matter for a motion hearing. On July 7, the Court conducted the hearing and granted counsel's request to withdraw. The Court referred the Defendant to the Federal Community Defenders' Office for the appointment of new counsel and set an in-person hearing for July 21. Because the Defendant was represented by counsel when he filed his *pro se* letter, the Court struck the letter.

The Defendant's third lawyer entered his appearance on July 8. This lawyer represented the Defendant during the July 21 proceedings, where he advised the Court that he needed additional time to address the Defendant's concerns about the case. The Court set sentencing for August 11.

**G.      August 11 Sentencing Hearing**

During the August 11 sentencing hearing, the amount of loss again became a disputed issue. Counsel for the Defendant told the Court that the Defendant believed the amount was much less than the amount cited in the PSR and in the Second Addendum. The Defendant asked that the previously stricken letter be readmitted through counsel. The Court granted the Defendant's request and all the matters raised in the Defendant's letter were presented in consideration of his sentence.

After taking a short recess to allow the parties to discuss the consequences of the Defendant's renewed objections, the Court granted the Defendant additional time "to consider resolving the issues involving the amount of loss, the amount of restitution, [and] relevant conduct for sentencing purposes," or "to determine whether or not the plea of guilty that [the Defendant] had previously presented be withdrawn in this case, and go forward to trial." (Aug. 11 Hr'g. Tr. 9.) The Court reset the matter for hearing on August 18.

## H.    The Government's Notice and August 18 Hearing

On August 14, the Government filed a Notice to the Court setting forth its position that the Defendant was bound by, and should not be permitted to withdraw, his guilty plea. The Defendant stated that he did not want to withdraw his plea and acknowledged that he pleaded guilty to the Indictment and that the Government presented evidence for each of the elements of access device fraud. The Defendant also reiterated his previously made argument with respect to certain purchases, including a $3,500 cash advance, and his criminal history category.

In response to the Defendant's argument about the $3,500 cash advance, the Court noted for the Defendant that the summary of the evidence the Government recited at the plea hearing included facts establishing that the Defendant obtained a $3,500 cash advance using the Discover card account that he took over and was not authorized to use. The Court pointed out that when it asked the Defendant whether he disagreed with any of the Government's evidence, he did not object to any facts that were related to the cash advance. Rather, the only objection he made involved a detail completely unrelated to the amount of loss or the elements of the offense. When given an opportunity to respond to the Court's interpretation of the events at the plea hearing, the

Defendant stated simply that he would maintain his arguments for appeal, but desired to go forward with sentencing. The Court took a break in the proceedings to allow the parties to prepare for sentencing.

After a one-hour recess, the Defendant requested additional time to brief the issues presented in the Government's Notice to the Court. The Court set a briefing schedule to address all outstanding issues that would impact its determination of the advisory guideline range and scheduled sentencing for November 3, 2008.

## I.    The Defendant's Sentence

In an October 27, 2008, Third Addendum, the Probation Officer states that the PSR had been revised to reduce the amount of loss to $25,718.02. The Officer noted that this change reflected that on June 16, 2008, the Court sustained the Defendant's objections to the fourteen line item purchases that were set forth in the Second Addendum. In sentencing the Defendant, the Court found that the information contained in the PSR regarding the specific amount of loss—that being the specific credit card charges—bore a sufficient indicia of reliability to support its probable accuracy, and that the Defendant had not produced evidence that called the reliability or correctness of the alleged facts into question. The Court also determined that the Defendant was responsible for the reported losses under the preponderance of the evidence standard. The Court concluded that the Defendant's actions weighed against acceptance of responsibility and supported an increase in the Defendant's offense level for obstruction of justice because he provided to the Court false information that was both material and willful. The Court rejected the Defendant's argument that his criminal history category substantially over-

represented the seriousness of his criminal history or the likelihood that he would commit other crimes. The Court sentenced the Defendant to thirty months' imprisonment and ordered that he pay $14,707.78 in restitution.

**L.    Appeal**

On appeal to the Seventh Circuit, the Defendant argued that his plea was invalid because the Court did not inform him about the nature of the charge and did not elicit an adequate factual basis for the plea. The Defendant also challenged the Indictment on grounds that it did not contain all the necessary signatures and did not track the statutory language. The Defendant maintained that the order of restitution was excessive because some of the credit card transactions occurred outside the time charged in the Indictment. Finally, the Defendant argued that his trial counsel furnished ineffective assistance.

In an unpublished opinion, the Seventh Circuit affirmed the district court and ruled: that the district court did not commit plain error when it concluded that the Defendant understood the charge and that the record contained a factual basis for a guilty plea; that the Defendant's guilty plea waived his challenges to his Indictment because those challenges did not impact subject matter jurisdiction; that credit cards transactions occurring within eighteen days of the "on or about" dates alleged in the Indictment were within the allowable time to be considered for restitution; and that the ineffective assistance of counsel argument would be better presented in a motion to the district court under 28 U.S.C. § 2255. *United States v. Thomas*, No. 08-3806, 2009 WL 2488378 (7th Cir. Aug. 17, 2009).

**M.     Habeas Petition**

The Defendant seeks habeas relief on grounds that his second court-appointed defense counsel, Attorney Albert Anzini, rendered ineffective assistance. He contends that his attorney should have objected to the validity of the Indictment because it did not assert all the elements of an offense under 18 U.S.C. § 1029(a)(2), and because it did not adequately inform him of the charges against him. The Defendant also claims that the Indictment was jurisdictionally deficient because spending with the Chase credit card did not reach the $1,000 statutory threshold. The Defendant further submits that his counsel was ineffective for failing to challenge the amount of loss on grounds that it should not have been considered relevant conduct and for failing to object to the amount of restitution awarded.

## DISCUSSION

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is of jurisdictional or constitutional magnitude, or there has been a "complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Motions to vacate a conviction or correct a sentence ask the court to grant an extraordinary remedy to one who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006).

In seeking to prove that his counsel provided ineffective assistance, the Defendant "bears a heavy burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). To establish ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668,

688 (1984); and (2) that there is a reasonable probability that "but for counsel's unprofessional errors the result of the proceeding would have been different," *id.* at 694. "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (citation omitted).

## A.      The Indictment

The Indictment charged that from December 10, 2006, and continuing until February 20, 2007, the Defendant, knowingly and with intent to defraud, used one or more unauthorized access devices, specifically a Chase Visa credit card with account number ending in 5163 and a Discover credit card with account number ending in 7999. The Indictment charged that by such conduct, the Defendant obtained goods and money with a total value of $1000 or more during a one year time period, and that such conduct affected interstate commerce. (Indictment, DE 1.) The Indictment charged that this conduct violated 18 U.S.C. § 1029(a)(2). This statute provides that whoever "knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period" has committed a violation of the statute "if the offense affects interstate or foreign commerce." The punishment for the offense is set forth in subsection (c) of § 1029.

The Defendant argues that the Indictment was defective because it failed to assert every element of an offense under 18 U.S.C. § 1029(a)(2), and it did not "specify 'anything of value' to properly apprise the [Defendant] of 'the' nature of the charges so that he may prepare a defense." (Supplement 3, DE 110.) The Defendant also asserts that his counsel should have discovered that

the Court did not have jurisdiction because the charges did not meet the $1,000 threshold set forth in § 1029(a)(2).

An "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is constitutionally sufficient if it (1) contains the elements of the offense intended to be charged; (2) sufficiently apprises the defendant of the charge so that he can defend against it; and (3) enables the defendant to plead the judgment as a bar to subsequent prosecution for the same offense. *Russell v. United States*, 369 U.S. 749, 763–64 (1962); *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003). The Indictment here, charging the Defendant with access devise fraud, fulfills all three of these requirements.

"'Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished.'" *United States v. Roman*, 728 F.2d 846, 850 (7th Cir. 1984) (quoting *United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981). The Defendant argues that the Government "chang[ed] the wording of the statute to make its meaning totally different" (Supplement 3) because the Indictment charged that the Defendant "obtained goods and money with a total value of $1,000.00 or more during a one year time period," and the statute's prohibition is against obtaining anything of value "aggregating $1,000 or more during [a one-year] period," 18 U.S.C. § 1029(a)(2). The Defendant's argument that using "total value of $1,000 or more" instead of "aggregating $1,000 or more" altered the meaning of § 1029(a)(2) dramatically such that an element of the offense was eliminated is without merit. The two phrases mean the same thing, and the Indictment sufficiently stated the elements of the offense

by tracking the language of the statute. *See United States v. Harvey*, 484 F.3d 453, 456 (7th Cir. 2007) (stating that "[w]hile it is normally sufficient for an indictment to track the words of the statute under which the defendant is being charged, this kind of mimicry is not necessary" because "'Indictments are reviewed on a practical basis and in their entirety, rather than in a hypertechnical manner'") (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)).

The Defendant argues that the Indictment was missing other language that is found in the statute. This argument too fails because the language he cites was either already included or was not an element of his offense. For example, there was no "traffics in" language in the Indictment because his offense was for using, not trafficking, unauthorized access devices. *See* 18 U.S.C. § 1029(a). Likewise, the Indictment did not refer to "foreign commerce" because the Defendant's offense affected only interstate commerce, as explicitly charged in the Indictment. Language stating that the Defendant would "be punished as provided in subsection (c)," § 1029(a)(2), is unrelated to the elements of the offense, *see, e.g., United States v. Martinez*, 518 F.3d 505, 509 (7th Cir. 2008) (stating that drug quantity is not an element of drug offenses even thought the amount may impact sentencing), and was not required to be included in the Indictment.

The Defendant's argument that the Government was required to identify with more specificity the items he received from his use of the credit cards, and that his counsel was ineffective for not challenging the Indictment on this ground, and allowing him instead to plead guilty, is similarly not well taken. "Facial sufficiency is not a high hurdle. Indictments need not exhaustively describe the facts surrounding a crime's commission nor provide lengthy explanations of the elements of the offense." *United States v. Bates*, 96 F.3d 964, 970 (7th Cir. 1996). "'The defendant's constitutional right is to know the offense with which he is charged,

not to know the details of how it will be proved.'" *United States v. Agostino*, 132 F.3d 1183, 1191 (7th Cir. 1997) (quoting *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981)). The Indictment identified the relevant time frame of the offense, informed the Defendant that he used unauthorized access devices to obtain goods and money with a total value of more than $1,000, and informed the Defendant which specific credit cards were purportedly used to obtain the goods and money. It is difficult to see how the Indictment did not apprise the Defendant "with reasonable certainty" of the nature of the charges so that he could pin down the specific conduct at issue and prepare a defense. The Defendant's counsel was not ineffective for failing to challenge the Indictment on these grounds.

The Defendant contends that the Indictment also suffered from a jurisdictional defect because, according to the Defendant, spending with each credit card must meet the $1,000 jurisdictional limit independent of any other credit card expenditures, and one of the cards he was charged with using did not meet this requirement. The Defendant cites *United States v. Iredia*, 866 F.2d 114, 120 (5th Cir. 1989), in support of his claim that spending for each credit card must meet the threshold limit. *Iredia* does not support the Defendant's position, but contradicts it. In *Iredia*, the defendant argued that he could not be charged with separate offenses for each unauthorized use of a credit card in excess of $1,000 because the statute requires that all his unauthorized credit cards during a one-year period be aggregated as a single offense. The court disagreed and held that the "one or more" language of § 1029(a)(2) did not prevent the government from charging the defendant with separate criminal offenses for the use of each unauthorized credit card for which the $1,000 of value had been obtained during a one-year period. The court agreed with the government's reasoning that the "one or more" language in the

statute was "intended to cover those situations where multiple unauthorized access devices are required in conjunction with each other to complete a fraudulent transaction." *Iredia*, 866 F.2d at 120. The Defendant's crime represents just such a scenario, and the Government was entitled to consider all the Defendant's uses of "one or more" unauthorized credit cards within a one-year period to reach the $1,000 limit. Any attempt by the Defendant's counsel to challenge the Indictment on this ground would have been unsuccessful. Thus, neither prong of the *Strickland* analysis is met.


**B.     Relevant Conduct**

The Defendant argues that his counsel rendered ineffective assistance when he failed to challenge the amount of loss on grounds that it was calculated using charges that were not part of the offense and could not be considered relevant conduct. The Defendant contends that the outcome would have been different if his counsel had argued that purchases with the CitiGroup cards did not constitute relevant conduct because they did not occur during the offense of conviction, specifically during the time from December 10, 2006, to February 20, 2007.

In the commission of his offense, the Defendant took over dormant credit card accounts held in the name of "William Thomas." The affected accounts were from a Chase Visa credit card and a Discover credit card. For each card, the Defendant contacted the credit card company, identified himself as the cardholder, and requested an address and phone number change. The new addresses were locations where the Defendant had requested and received permission to get mail, the Fort Wayne residences of the Defendant's friend and the Defendant's brother. The Defendant requested the address change for the Chase card on November 21, 2006, and for the

Discover card on February 17, 2007. Telephone numbers that were captured on Chase's and Discover's automatic number identification (ANI) systems during the period of credit card activity that followed the takeovers were connected to phone numbers associated with the Defendant.

The three CitiGroup cards, a Sears Gold MasterCard, Sears Consumer Card, and Zales Card, belonging to the same victim were also mailed to "William Thomas" at the residence of the Defendant's brother. Likewise, the phone numbers captured by CitiGroup's ANI system for the Sears cards were the same as those captured for the Chase and Discovery cards. The Sears Gold MasterCard was used from January 11 to February 4, 2007, the Sears Consumer Account was used from February 11, 2007, to February 18, 2007, and the Zales card was used for a single purchase on February 15, 2007.

The offense of conviction involved those losses associated with the Chase and Discover cards. However, the losses associated with the CitiGroup card were also appropriately used to calculate the offense level. Under the Guidelines, the Defendant is responsible for all acts that he committed during the commission of the offense of conviction, as well as for any acts that were part of the "same course of conduct or common scheme or plan as the offense of conviction." *See* U.S.S.G. § 1B1.3. "Relevant conduct is factored into the Guidelines sentencing calculations as if the defendant had been convicted of that conduct." *United States v. Panaigua-Verdugo*, 537 F.3d 722, 726 (7th Cir. 2008) (citing *United States v. White*, 519 F.3d 342, 347 (7th Cir. 2008)). The Application Notes to § 1B1.3 state that "common scheme or plan" and "same course of conduct" are two closely related concepts, which are described as follows:

> Common scheme or plan. For two or more offenses to constitute part of a
> common scheme or plan, they must be substantially connected to each other by at

least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi. For example, the conduct of five defendants who together defrauded a group of investors by computer manipulations that unlawfully transferred funds over an eighteen-month period would qualify as a common scheme or plan on the basis of any of the above listed factors; i.e., the commonality of victims (the same investors were defrauded on an ongoing basis), commonality of offenders (the conduct constituted an ongoing conspiracy), commonality of purpose (to defraud the group of investors), or similarity of modus operandi (the same or similar computer manipulations were used to execute the scheme).

(B) Same course of conduct. Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required. For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity. The nature of the offenses may also be a relevant consideration (e.g., a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals).

U.S.S.G. § 1B1.3, Application Note 9. The Defendant's fraudulent activity with the CitiGroup cards involved a common victim, a common purpose, and a similar modus operandi as the offense conduct. In addition, the degree of similarity of the offenses, the regularity of the offenses, and the time interval between the offenses demonstrates that they are part of the same course of conduct. The Defendant's argument that his counsel should have raised an objection to the CitiGroup cards because the card transactions did not take place during the offense of conviction completely ignores the well-established rule that relevant conduct may derive from the same course of conduct or common scheme or plan as the offense of conviction. The

Defendant's counsel did not render deficient representation by failing to challenge the inclusion of the CitiGroup losses in the calculation of his offense level.

## C.    Restitution

The Defendant claims that his counsel rendered ineffective assistance when he failed to object to the restitution amount imposed by the Court. The Defendant insists that restitution should not have included credit card charges that occurred outside the dates identified in the Indictment: "From on or about December 10, 2006 and continuing until on or about February 20, 2007." (Indictment, DE 1.) This same argument was rejected on direct appeal due to the degree of flexibility that is allowed by "on or about" language in an indictment. *See United States v. Thomas*, No. 08-3806, 2009 WL 2488378 (7th Cir. Aug. 17, 2009) ("The actual transactions to which Thomas admitted occurred during [the period alleged in the Indictment], or within 18 days of it. That degree of flexibility is allowed by 'on or about' language."). Accordingly, the Defendant's counsel did not render ineffective assistance when he failed to advance this argument to the district court to dispute the order of restitution.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Where, as here, the district court has rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate").

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. Additional argument is not necessary here. The constitutional issue presented by the Defendant's Motion is whether his counsel rendered ineffective assistance. Because each challenge that the Defendant contends counsel should have raised in relation to his Indictment and sentence would have been unsuccessful, the Defendant cannot make the necessary showing that reasonable jurists would find the district court's assessment of counsel's performance debatable or wrong. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.") Consequently, the Court will deny a certificate of appealability as to the Defendant's Motion.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Vacate, Set-Aside, or Correct a Sentence by a Person in Federal Custody [DE 107] is DENIED and the Defendant is DENIED a certificate of appealability.

SO ORDERED on July 9, 2010.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT